IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17CV339

| | |
|---|---|
| ALICE CROWDER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) ORDER |
| NANCY A. BERRYHILL, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

This matter is before the Court on the parties' cross motions for summary judgment (# 10, 14). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, Plaintiff's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED.

**I.     Procedural History**

On August 29, 2013, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning February 21, 2013.[1] (Transcript of Administrative Record ("T.") 16.) The Social Security Administration denied Plaintiff's claim initially on May 1, 2014. (T. 16.) The claim was denied upon reconsideration on July 1, 2014. (T. 16.) On July 16, 2014, Plaintiff filed a written request for a hearing. (T. 16.)

On June 10, 2016, a disability hearing was held before an Administrative Law Judge

---
[1] Prior claims for a period of disability, disability insurance benefits, and supplemental security income were filed on February 25, 2013, denied at the initial level on June 14, 2013, and then not pursued. (T. 16.)

("ALJ") in Charlotte, North Carolina. (T. 16.) Lavonne Brent, a vocational expert ("VE"), appeared at the hearing. (T. 16.) Danielle Banks, an attorney, appeared on behalf of Plaintiff at the hearing. (T. 16.)

The ALJ issued a decision finding that Plaintiff was not disabled from February 21, 2013, through the date of his decision, August 2, 2016. (T. 16-26.) Plaintiff requested review of the ALJ's decision. (T. 7.) The Appeals Council denied Plaintiff's request for review. (T. 7-9.) On June 21, 2017, Plaintiff filed the instant action seeking review of the Commissioner's final decision. See Compl. (# 1)

## II.     Standard for Determining Disability

An individual is disabled for purposes of receiving disability payments if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). The Commissioner undertakes a five-step inquiry to determine whether a claimant is disabled. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Under the five-step sequential evaluation, the Commissioner must consider each of the following, in order: (1) whether the claimant has engaged in substantial gainful employment; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is sufficiently severe to meet or medically equal the severity of one or more of the listing of impairments contained in Appendix 1 of 20 C.F.R. Part 404, Subpart P; (4) whether the claimant can perform his or her past relevant work; and (5) whether the claimant is able to perform any other work considering his or her age, education, and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520; Mastro, 270 F.3d at 177; Johnson, 434 F.3d at 653 n.1.

At the first two steps of the sequential evaluation, the burden is on the claimant to make the requisite showing. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If a claimant fails to satisfy his or her burden at either of these first two steps, the ALJ will determine that the claimant is not disabled and the process comes to an end. Mascio v. Colvin, 780 F.3d 632, 634-35 (4th Cir. 2015). The burden remains on the claimant at step three to demonstrate that the claimant's impairments satisfy a listed impairment and, thereby, establish disability. Monroe, 826 F.3d at 179.

If the claimant fails to satisfy his or her burden at step three, however, then the ALJ must still determine the claimant's RFC. Mascio, 780 F.3d at 635. After determining the claimant's RFC, the ALJ proceeds to step four in order to determine whether the claimant can perform his or her past relevant work. Id. The burden is on the claimant to demonstrate that he or she is unable to perform past work. Monroe, 826 F.3d at 180. If the ALJ determines that a claimant is not capable of performing past work, then the ALJ proceeds to step five. Mascio, 780 F.3d at 635.

At step five, the ALJ must determine whether the claimant can perform other work. Id. The burden rests with the Commissioner at step five to prove by a preponderance of the evidence that the claimant is capable of performing other work that exists in significant numbers in the national economy, taking into account the claimant's RFC, age, education, and work experience. Id.; Monroe, 826 F.3d at 180. Typically, the Commissioner satisfies her burden at step five through the use of the testimony of a VE, who offers testimony in response to a hypothetical question from the ALJ that incorporates the claimant's limitations. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180. If the Commissioner satisfies her burden at step five, then the ALJ will find that the claimant is not disabled and deny the application for disability benefits. Mascio, 780 F.3d at 635; Monroe, 826 F.3d at 180.

**III.    The ALJ's Decision**

In his August 2, 2016 decision, the ALJ ultimately found that Plaintiff was not disabled under sections 216(i) and 233(d) of the Social Security Act. (T. 26.) In support of this conclusion, the ALJ made the following specific findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.

(2)    The claimant has not engaged in substantial gainful activity since February 21, 2013, the alleged onset date (20 C.F.R. § 404.1571 et seq.).

(3)    The claimant has the following severe impairments: history of benign brain tumor; status post craniotomy; left rotator tendinopathy and bursitis; obesity[2]; and history of carpal tunnel syndrome (20 C.F.R. § 404.1520(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

(5)    The claimant has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b). She can do frequent, but not constant fingering, with the right upper extremity; occasional reaching with the left upper extremity; and she must avoid concentrated exposure to noise and hazards.[3]

(6)    The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).[4]

(7)    The claimant was born on November 23, 1964, and she was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 C.F.R. § 404.1563).

(8)    The claimant has at least a high school education, and she is able to communicate in English (20 C.F.R. § 404.1564).

(9)    Transferability of job skills is not material to the determination of disability

---

[2] Plaintiff's height is approximately 65.5 inches. (T. 19.) In February 2016, Plaintiff's weight was 204 pounds and 12.8 ounces. (T. 19.)

[3] Under the regulations, a full range of light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). If an individual can do light work, he or she can also do sedentary work, unless there are additional limiting factors, such as loss of fine dexterity or an inability to sit for long periods of time. Id.

[4] Plaintiff has past relevant work as an assembler and a fork lift operator. (T. 24.)

>        because using the Medical-Vocational Rules as a framework supports a
>        finding that the claimant is "not disabled," whether or not the claimant has
>        transferable job skills (See Social Security Ruling ("SSR") 82-41 and 20
>        C.F.R. Part 404, Subpart P, Appendix 2).
>
>    (10) Considering the claimant's age, education, work experience, and RFC,
>        there are jobs that exist in significant numbers in the national economy
>        that she can perform (20 C.F.R. §§ 404.1569, 404.1569(a)).[5]
>
>    (11) The claimant has not been under a disability, as defined in the Social
>        Security Act, from February 21, 2013, through the date of his decision,
>        August 2, 2016 (20 C.F.R. § 404.1520(g)).

(T. 16-26.)

## IV. Standard of Review

Title 42, United States Code, Section 405(g) provides that an individual may file an action in federal court seeking judicial review of the Commissioner's denial of social security benefits. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). The scope of judicial review is limited in that the district court "must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); accord Monroe, 826 F.3d at 186. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig, 76 F.3d at 589 (internal quotation marks omitted). It is more than a scintilla but less than a preponderance of evidence. Id.

When a federal district court reviews the Commissioner's final decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Id. Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she was not disabled is supported by

---

[5] The VE testified that Plaintiff could perform the following representative light, unskilled jobs: an inspector, with 434,170 jobs nationally; a folder, with 420,910 jobs nationally; and a checker, with 68,090 jobs nationally. (T. 25.)

substantial evidence in the record, and whether the ALJ reached his decision based on the correct application of the law.  Id.

V.     **Discussion**

   A.     **The ALJ properly evaluated the opinion evidence from Vinay Deshmukh, M.D.**

In Plaintiff's first assignment of error, she argues that the ALJ erred in the evaluation of Dr. Deshmukh's opinion.  Pl.'s Mem. Supp. (# 11) at 5-13.  Plaintiff contends that Dr. Deshmukh's opinions establish she is disabled, and the ALJ failed to provide good reasons for rejecting these opinions.  Id.  Plaintiff concludes that she is entitled to remand.  Id. at 13.

At the time of the ALJ's decision, the Regulations provided as follows with respect to the Social Security Administration's criteria for evaluating opinion evidence:

> Evidence that you submit or that we obtain may contain medical opinions.  Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.

20 C.F.R. § 404.1527(a)(2).[6]  The Regulations direct that the ALJ must analyze and weigh the evidence of record with the following factors taken into consideration, unless the opinion of the treating source is given controlling weight:  (1) examining relationship, (2) treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors.  20 C.F.R. § 404.1527(c); see Cohen v. Berryhill, 272 F. Supp. 3d 779, 781 (D.S.C. Aug. 23, 2017).

As a general rule, more weight is given to a medical professional who examines a claimant, as opposed to a non-examining source.  20 C.F.R. § 404.1527(c)(1); see Patterson v. Colvin, No. 5:12-CV-063-RLV-DCK, 2013 WL 3035792, at *4 (W.D.N.C. June 17, 2013).  When a treating

---

[6] This opinion reflects the Code of Federal Regulations as it stood on the relevant date, which is the date of the ALJ's decision, August 2, 2016.  (T. 26.)

6

source's opinion regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given "controlling weight." 20 C.F.R. § 404.1527(c)(2). An ALJ may conclude that opinion evidence from a treating source is entitled to little weight, but the ALJ is nevertheless required to adequately explain that decision. See Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (noting that the ALJ must explain why when he fails to give a treating source less than controlling weight); see also Hines v. Barnhart, 453 F.3d 559, 563 n.2 (4th Cir. 2006) ("The treating physician rule is not absolute. An ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contradictory evidence.") (internal quotation omitted)).

In the instant case, a review of the ALJ decision reveals the following: The ALJ extensively outlined Plaintiff's allegations and hearing testimony. (T. 21-22.) The ALJ then made the following credibility determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the symptoms she allegedly experiences; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(T. 22.)

The ALJ noted the following: Plaintiff had surgery for a brain tumor in February 2013. (T. 22.) Plaintiff received radiation therapy post-operatively, which was completed in August 2013. (T. 22.) In September 2013, Plaintiff was reported to be doing well with no evidence of disease. (T. 22.) Plaintiff's MRI changes have resolved, and her annual studies have shown no evidence of residual or recurrent tumor. (T. 22.) Plaintiff complained in December 2014 of persistent gait difficulty, but her gait and station were described as normal upon examination. (T.

22.)

The notes from Plaintiff's initial visit with primary care physician Jacques P. Laguerre, M.D. in May 2015 include gait instability and left arm weakness in his assessment, but Dr. Laguerre's physical findings make no reference to any actual issues with gait or muscle strength. (T. 22.) Plaintiff's subsequent visits with Dr. Laguerre do not include a mention of either gait instability or left arm weakness. (T. 22.) In fact, the ALJ notes that Dr. Laguerre's records from May 2015 and February 2016 show he recommended lifestyle modifications, such as regular exercise, to address Plaintiff's obesity. (T. 22.) The ALJ points out that regular exercise would not likely be advised for an individual actually experiencing gait instability. (T. 22.)

The ALJ gave "little weight" to the medical source statement from Dr. Deshmukh, which is dated May 26, 2015. (T. 24.) The ALJ noted that the medical source statement reflects that Plaintiff's last visit with Dr. Deshmukh was February 21, 2013. (T. 24.) The ALJ concluded that this was not consistent with the treatment records, which demonstrate that Dr. Deshmukh actually saw Plaintiff as recently as December 2014. (T. 24.) The ALJ further concluded that Dr. Deshmukh's records from December 2014 show entirely normal findings of examination and provide no support for the degree of functional limitation he opines. (T. 24.) The ALJ ultimately found: "[Dr. Deshmukh's] opinion is not entitled to controlling weight even though he is a treating physician." (T. 24.)

The ALJ, however, gave "substantial weight" to the opinions offered by the State agency medical consultants regarding Plaintiff's exertional capacity for light work with occasional reaching of the left and avoidance of concentrated exposure to noise and hazards because those opinions "are consistent with the record as a whole." (T. 24.) The ALJ further found that Plaintiff is "able to do frequent, but not constant fingering, with the right upper extremity due to carpal

tunnel syndrome, which was not considered by the State agency consultants." (T. 24.)

Next, the ALJ noted that he had considered the evidence showing Plaintiff was approved for long-term disability by a private insurance company in August 2013, which was approximately six months after her surgery for the brain tumor. (T. 24.) Relying on 20 C.F.R. § 404.1504,[7] the ALJ noted that a determination by another agency is not binding on the Social Security Administration. (T. 24.)

The Court will now address Plaintiff's various arguments. First, Plaintiff contends that the ALJ erred by not specifically mentioning each factor for assessing medical opinions listed in 20 C.F.R. § 404.1527(c). Pl.'s Mem. Supp. (# 11) at 8-10. This argument is meritless because an ALJ is <u>not</u> required to apply each factor in a mechanical fashion, so long as he properly articulates the reasoning behind the weight accorded to the opinion. <u>Skinner v. Berryhill</u>, No. ADC-16-3951, 2017 WL 5624950, at *9 (D. Md. Nov. 20, 2017) (citing <u>Carter v. Astrue</u>, No. CBD-10-1882, 2011 WL 3273060, at *6 (D. Md. July 27, 2011)); <u>see</u> <u>Acosta v. Colvin</u>, No. 1:14CV1056, 2016 WL 1229084, at *6 (M.D.N.C. Mar. 28, 2016) ("An adjudicator need not apply the factors in a mechanical fashion nor engage in a rigid analysis. The adjudicator's analysis is sufficient if it includes specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and [is] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight.") (internal citation and quotation marks omitted).

Second, Plaintiff contends that the ALJ erred by failing to acknowledge or analyze Dr. Deshmukh's August 2013 opinion. Pl.'s Mem. Supp. (# 11) at 7. This argument must fail because

---

[7] 20 C.F.R. § 404.1504 provides: "A decision by any nongovernmental agency or any other governmental agency about whether you are disabled . . . is based on its rules and is not our decision about whether you are disabled . . . . We must make a disability . . . determination based on social security law. Therefore, a determination by another agency that you are disabled . . . is not binding on [the Social Security Administration]."

9

an ALJ is not required to address each and every piece of evidence. Cain v. Berryhill, No. 5:17-CV-48-MOC, 2017 WL 6419299, at *3 (W.D.N.C Dec. 15, 2015); see also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("[T]he ALJ is not required to address every piece of evidence[;] [instead,] he must . . . build an accurate and logical bridge from the evidence to his conclusion.").

Third, Plaintiff contends that Dr. Deshmukh's opinion was the only opinion from an examining source. Pl.'s Mem. Supp. (# 11) at 8. This argument must fail because Plaintiff was also examined and treated by primary care physician Dr. Laguerre. See (T. 647-686).

Fourth, Plaintiff contends that the ALJ failed to acknowledge or discuss Dr. Deshmukh's status as a neurosurgeon who had performed surgery on Plaintiff. Pl.'s Mem. Supp. (# 11) at 8. In the ALJ's opinion, he specifically noted that Plaintiff testified during her hearing before the ALJ that Dr. Deshmukh was the doctor who performed the surgery to remove her brain tumor. (T. 21.)

Fifth, Plaintiff contends that the ALJ "could have," with the implication being should have, enlisted a review of the record and testimony by a medical expert, arranged for a consultative expert, or sent the entire file back to the State agency for an assessment by the nonexamining consultants with the updated evidence. Pl.'s Mem. Supp. (# 11) at 12-13. The Court is not persuaded that these actions were necessary in this case because the ALJ properly based his RFC finding on Plaintiff's subjective complaints, the objective medical evidence, and the opinions provided by treating, examing, and nonexamining physicians. See Felton-Miller, 459 F. App'x 226, 231 (4th Cir. 2011).

Finally, Plaintiff contends that the ALJ erred by giving the non-examining State agency medical consultants "great weight." Pl.'s Mem. Supp. (# 11) at 11. The Court concludes that the ALJ did not err as he was required to consider the State agency medical consultants' assessments

10

as opinion evidence because they "are experts in Social Security disability evaluation." See 20 C.F.R. § 404.1527(e)(2)(i). The ALJ shall "consider the state agency physician assessments as opinion evidence." Smith v. Colvin, No. 6:15-1489-TLW-KFM, 2016 WL 4150755, at *19 (D.S.C. May 31, 2016) (citing 20 C.F.R. § 404.1527(e)(2)(i)); see also Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986) (noting that opinions of a non-examining physician must be consistent with the record as a whole to constitute substantial evidence).

In sum, the ALJ's decision not to afford controlling weight to Dr. Deshmukh's opinion is consistent with the relevant law and supported by valid reasons. See Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) ("[T]he opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability."). Consequently, Plaintiff's first assignment of error is overruled.

### B. The ALJ fully accounted for Plaintiff's headaches.

In Plaintiff's second assignment of error, she argues that the ALJ failed to fully account for her headaches, which are the result of her craniotomy/brain tumor that were found to be a severe impairment. Pl.'s Mem. Supp. (# 11) at 13-18. In particular, Plaintiff contends: (a) her headaches contributed to additional, significant functional limitations not addressed in the ALJ's RFC; and (b) the ALJ erred by failing to account for all the practical effects of her headaches in the RFC. Id. at 14-18. Plaintiff concludes that remand is warranted. Id. at 18.

RFC is defined as "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). SSR 96-8p provides that the ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Monroe, 826 F.3d at 189 (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). In formulating a

RFC, the ALJ is not required to discuss each and every piece of evidence. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). The ALJ is, however, required to build a logical bridge from the evidence of record to his conclusion. Cain, 2017 WL 6419299, at *3; see also Clifford, 227 F.3d at 872.

In the instant case, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). (T. 20.) In particular, the ALJ found that Plaintiff could do frequent, but not constant fingering, with the right upper extremity; occasional reaching with the left upper extremity; and she must avoid concentrated exposure to noise and hazards. (T. 20.) The Court concludes that Plaintiff has failed to show that she was more limited than the ALJ determined her to be.

A review of the ALJ's opinion reveals the following with respect to Plaintiff's headaches: In mid-April 2013, records from Carolina Neurosurgery & Spine demonstrate that Plaintiff was doing very well, but Plaintiff claimed that she was experiencing headaches three times a week. (T. 23.) Those records do not suggest that any medication was prescribed for the headaches or the headaches were thought to warrant further evaluation. (T. 23.) In October 2013, notes refer to only occasional headaches. (T. 23.)

In February 2014, notes refer to Plaintiff's headaches occurring almost daily, but the headaches were reportedly controlled with Fioricet.[8] (T. 23.) Moreover, Plaintiff was doing well over all. (T. 23.) In December 2014, Plaintiff continued to complain about headaches that she reported to be unchanged. (T. 23.)

In May 2015, Plaintiff first established care with Dr. Laguerre, and at that time, she

---

[8] See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); see also 20 C.F.R. § 404.1530(a) ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").

12

complained with daily headaches since being diagnosed with a brain tumor. (T. 23.) Plaintiff reportedly took Fioricet for her symptoms. (T. 23.) Dr. Laguerre encouraged Plaintiff to follow up with neurology.[9] (T. 23.)

In February 2016, Plaintiff continued to complain with headaches but reported she was out of Fioricet, was applying for disability, and had not seen neurology. (T. 23.) Dr. Laguerre, again, recommended that Plaintiff follow up with neurology. (T. 23.)

In March 2016, Plaintiff's neurological system was negative. (T. 23.) The ALJ found that the evidence of record offered no support for headaches as allegedly frequent and incapacitating as Plaintiff claimed at her hearing before the ALJ. (T. 23.) The ALJ found that the evidence indicated that Plaintiff's headaches were controlled with Fioricet, yet she was out of medication when she saw Dr. Laguerre in February 2016, and Plaintiff failed to follow up with neurology. (T. 23.)

The Court declines Plaintiff's invitation to reweigh the evidence of record. See Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence[.]"). The ALJ's findings with respect to Plaintiff's headaches are supported by substantial evidence and consistent with relevant legal authority. Moreover, Plaintiff has not met her burden of establishing that she is more limited than the ALJ found. See Creegan v. Colvin, No. 1:13CV5, 2014 WL 3579659, at *3 (W.D.N.C. July 21, 2014) ("It is the claimant's burden, however, to establish her RFC by demonstrating how her impairment impacts her functioning."); see also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The

---

[9] Plaintiff argues that she failed to seek treatment from a neurologist due to lack of insurance and an inability to afford treatment. Pl.'s Mem. Supp. (# 11) at 16. "A claimant may not be penalized for failing to seek treatment she cannot afford[.]" Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). The Court is not convinced that there was error in this regard because the record does not reflect that Plaintiff failed to follow up with a neurologist because she could not afford it and lacked insurance. In fact, the record appears to demonstrate that Plaintiff had insurance. See (T. 45, 49-51.) The record also demonstrates that Plaintiff was being treated by other doctors. See (T. ). Finally, Plaintiff testified before the ALJ that she was still receiving long-term disability benefits. (T. 50.)

13

burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Accordingly, Plaintiff's second and final assignment of error must be overruled.

## VI. Conclusion

In light of the foregoing, Plaintiff's motion for summary judgment (# 10) is DENIED, and the Commissioner's motion for summary judgment (# 14) is GRANTED.

Signed: July 24, 2018

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge